UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARLENE NEAMON, as the Executrix            **REPORT AND**
named under the Last Will and Testament      **RECOMMENDATION**
of DELONNE SCHARF, Deceased,

                                             13-CV-00087(S)(M)
                       Plaintiff,

v.

UNITED STATES OF AMERICA,

                       Defendant.
_____

        Before me is the government's motion pursuant to Fed. R. Civ. P. ("Rule")

12(b)(1), 12(b)(6) and 12(c) seeking to dismiss the Complaint for lack of subject matter

jurisdiction, for failure to state a claim, and/or for judgment on the pleadings [15].[1]  That motion,

being dispositive, has been referred to me by Hon. William M. Skretny for a Report and

Recommendation [12].  Oral argument was held on November 1, 2013 [25] and, with my

permission, the parties filed post-argument Briefs [26, 28].

        For the following reasons, I recommend that the motion be granted.


                              **BACKGROUND**

        The material facts are undisputed.  On January 25, 2013 plaintiff Marlene

Neamon, the named executrix under the last will and testament of her father, Delonne Scharf,

commenced this action for damages pursuant to the Federal Tort Claims Act ("FTCA"), 28

U.S.C. §1346(b)(1), alleging that negligent medical treatment rendered to Mr. Scharf at the

Veterans Hospital in Buffalo, New York resulted in his death on November 30, 2009.  Complaint

_____

        [1]        Bracketed references are to CM/ECF docket entries.

[1]. On May 24, 2011 plaintiff filed a "Petition for Probate and Letters Testamentary" in the Cattaraugus County Surrogate's Court ([21], pp. 5 of 20, *et seq*.), stating that she intended to "prosecute [a] personal injury claim against US Veterans Administration for medical malpractice" (id., p. 10 of 20). However, for reasons which are unexplained, plaintiff has not yet been appointed executrix of Mr. Scharf's estate. Roach Declaration [21], ¶6.

Plaintiff's counsel subsequently "advised the court that Ms. Neamon was the named Executrix but that letters testamentary had not been issued and that it was her intention to pursue the same. Defense counsel advised the Court that Defendant would be moving to dismiss on this basis. The Court suggested that Plaintiff need not apply for letters testamentary immediately and that the motion contemplated by Defendant could be brought and decided first." Plaintiff's Memorandum of Law [17-1], p. 2. This arrangement was confirmed by my July 19, 2013 Text Order [14].

In moving to dismiss, the government argues that because plaintiff has not obtained letters testamentary confirming her appointment as executrix of her father's estate, she lacks the capacity to assert claims for his injuries or death, and that this court therefore lacks subject matter jurisdiction over those claims. Government's Memorandum of Law [16], Point I(D).

Plaintiff responds that the government has failed to allege lack of capacity as an affirmative defense, which is waived if not pleaded (plaintiff's Memorandum of Law [17-1], pp. 2, 4), and argues that even if that defense is otherwise applicable, Rule 17(a)(3) allows substitution of the "real party in interest" in lieu of dismissal (id., pp. 2-4). She requests leave "to obtain letters testamentary and to be substituted in that capacity as Plaintiff in this case.

Upon doing so, such amendment would relate back to the commencement of this suit on January 25, 2013" (id., pp. 4-5).

**ANALYSIS**

**A.      Who Must Allege Capacity to Sue (or the Lack Thereof)?**

While there is some authority that a plaintiff's lack of capacity to sue "is an affirmative defense [which] can be waived if not raised in a timely manner", *see* Wiwa v. Royal Dutch Petroleum Co. 2009 WL 464946, *4 (S.D.N.Y. 2009) *and* Rule 9(a)(2) (lack of capacity to sue must be raised "by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge"), that is not the case where an allegation of capacity to sue is "required to show that the court has jurisdiction".  Rule 9(a)(1)(A).  *See also* Rule 8(a)(1) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction").  "A party seeking relief in a district court must at least plead facts which bring the action within the court's jurisdiction . . . . Failure to plead such facts warrants dismissal of the action."  Gray v. Internal Affairs Bureau, 292 F.Supp.2d 475, 476 (S.D.N.Y. 2003).

Therefore, whether capacity to sue must be affirmatively alleged by plaintiff, or specifically denied by the government, depends upon whether capacity to sue in this case is a condition of this court's subject matter jurisdiction.

**B.      Is Capacity to Sue a Jurisdictional Requirement of the FTCA?**

"Sovereign immunity is jurisdictional in nature.  Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  The government's "waiver of sovereign immunity with respect to the claim is a prerequisite to subject matter jurisdiction", Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003), and that waiver "is to be construed strictly and limited to its express terms".  Id.

Plaintiff argues that the FTCA's "jurisdictional requirements are that the Plaintiff shall have first presented the claim to the appropriate Federal agency and that the claim shall have been finally denied . . . . These statutory conditions precedent were fulfilled." Plaintiff's post-argument Brief [28], p. 1. However, submission of the claim to the appropriate federal agency is not the only condition precedent for subject matter jurisdiction in this case. "FTCA plaintiffs must meet the criteria of [28 U.S.C.] §1346(b)(1) before a district court may exercise jurisdiction." CNA v. United States, 535 F.3d 132, 141 (3rd Cir. 2008).

"In particular, §1346(b)(1) lists six threshold requirements that a plaintiff's claim must satisfy to confer jurisdiction.  A claim must be made '[1] against the United States, [2] for money damages, [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Id.

The sixth threshold requirement of §1346(b)(1) is at issue here. While plaintiff argues that "the question before the Court on Defendant's motion to dismiss is not one of State law, rather, it is a question of federal procedure" (plaintiff's Memorandum of Law [17-1], p. 3), I disagree. "By waiving sovereign immunity 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred' . . . the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." Liranzo v. United States, 690 F.3d 78, 86 (2d Cir. 2012).

Since the allegedly negligent acts occurred in New York State, I must decide whether under New York law the United States would be liable "to the claimant" - i.e., to plaintiff. The answer is clearly no: under New York law, an individual may not assert a claim for wrongful death or personal injuries sustained by a decedent unless and until letters of administration are issued. Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Center Properties, LLC, 435 F.3d 136, 140 (2d Cir.), cert. denied, 549 U.S. 810 (2006); Wiwa, **7, 8. See also Carrick v. Central General Hospital, 51 N.Y.2d 242, 250, n. 2 (1980) ("It is well established that the existence of a qualified administrator is essential to the maintenance of the action and that the statutory right to recover for wrongful death does not even arise until an administrator has been named through the issuance of letters of administration"); Lichtenstein v. State, 93 N.Y.2d 911, 913 (1999) ("When, as here, the claim is a 'survival' action on behalf of an intestate decedent, the proper claimant can be only a duly appointed personal representative in receipt of letters of administration").

Since plaintiff has failed to allege facts which satisfy the sixth threshold requirement for subject matter jurisdiction under the FTCA (nor do such facts exist),[2] I conclude that unless resort to Rule 17(a)(3) is appropriate, this action must be dismissed for lack of subject matter jurisdiction.

**C.      Does Rule 17(a)(3) Bar Dismissal?**

Rule 17(a)(3) provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest".

Plaintiff notes that she "has already cited multiple cases, reflecting a policy accepted throughout the federal courts, of allowing substitution of executors or administrators pursuant to [Rule] 17(a) in cases where family members, not duly appointed as estate representatives, initiated the litigation on behalf of the decedent". Plaintiff's post-argument Brief [28], pp. 2-3. However, in none of those cases was the government the defendant. "[T]he FTCA does not put the United States on the same footing as a non-sovereign defendant; rather, it imposes strict procedural requirements to which plaintiffs must adhere before they can sue." Glorioso v. F.B.I., 901 F.Supp.2d 359, 362 (E.D.N.Y. 2012).

---

[2]      Although plaintiff characterizes the jurisdictional issue as one of Article III standing (plaintiff's post-argument Brief [28], p. 3), I disagree. The issue here is whether plaintiff has satisfied the jurisdictional requirements of the FTCA, not Article III of the Constitution.

While Rule 17(a)(3) might on its face appear to be applicable here, "no single Rule can . . . be considered in a vacuum". <u>Nasser v. Isthmian Lines</u>, 331 F.2d 124, 127 (2d Cir.1964). Instead, the rules "must be read together". <u>Ouaknine v. MacFarlane</u>, 897 F.2d 75, 79 (2d Cir.1990). Therefore, Rule 17(a)(3) must be read in conjunction with Rule 82, which unequivocally states that "[t]hese rules do not extend or limit the jurisdiction of the district courts". They "merely prescribe the method by which the jurisdiction granted the courts by Congress is to be exercised". <u>Kontrick v. Ryan</u>, 540 U.S. 443, 454 (2004).[3]

"As a result of Rule 82, federal claims must satisfy the requirements of subject matter jurisdiction *before* the Rules may be applied." 14 <u>Moore's Federal Practice</u>, §82.02 (Matthew Bender 3d ed.) (emphasis added). Therefore, Rule 17(a) cannot "operate to confer jurisdiction which does not otherwise exist". <u>Airlines Reporting Corp. v. S and N Travel, Inc.</u>, 58 F.3d 857, 861 n. 4 (2d Cir. 1995). *See also* <u>Board of Managers of Mason Fisk Condominium v. 72 Berry Street, LLC</u>, 801 F.Supp.2d 30, 39 (E.D.N.Y. 2011) ("The Board attempts to avoid dismissal of the claim by relying on Rule 17(a)(3) . . . . This argument fails because Rule 17 cannot expand the Court's jurisdiction"); <u>Police and Fire Retirement System of City of Detroit v. IndyMac MBS, Inc.</u>, 721 F.3d 95, 111 (2d Cir. 2013) ("if jurisdiction is lacking at the commencement of a suit, it cannot be aided by the intervention of a plaintiff with a sufficient

---

[3] The government did not initially argue that the applicability of Rule 17(a)(3) is barred by Rule 82, nor did it initially focus upon the jurisdictional requirements of 28 U.S.C. §1346(b)(1). However, since both issues relate to subject matter jurisdiction, I raised them on my own at oral argument, giving the parties an opportunity to address them in post-argument submissions. *See* <u>United States v. O'Connor</u>, 2007 WL 3232093, *2 (W.D.N.Y. 2007) (Arcara, J.) ("a district court is obligated to and has the power to raise the question of subject matter jurisdiction even if the parties do not raise the issue") *and* Rule 56(f)(2), (3) (allowing dismissal on grounds not raised by the parties, provided that adequate notice is given).

claim . . . . Intervention cannot cure any jurisdictional defect that would have barred the federal

court from hearing the original action").

Since I conclude that this court lacks subject matter jurisdiction under the FTCA,

it follows that Rule 17(a)(3) cannot apply under these circumstances. *See* 35A Am. Jur. 2d,

Federal Tort Claims Act §189 ("Jurisdiction under the Federal Tort Claims Act is unaffected by

the Federal Rules of Civil Procedure, which prescribe the methods by which jurisdiction is to be

exercised but do not enlarge jurisdiction"); Prechtl v. United States, 84 F. Supp. 889, 890

(W.D.N.Y. 1949) (citing Rule 82).[4]

However, in case this conclusion is not adopted by District Judge Skretny, I will

also address (in the alternative) whether, if it *can* be applied, Rule 17(a)(3) *should* be applied

here in order to avoid dismissal.  The government argues that Rule 17(a)(3) allows the court

"discretion to dismiss an action where there was no semblance of any reasonable basis for

naming an incorrect party".  Government's Reply Memorandum of Law [20], p. 2[5] (*citing* 1966

Advisory Committee Notes to Rule 17(a)(3) and Stichting Ter Behartiging Van de Belangen Van

Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber, 407 F.3d 34, 43

(2d Cir. 2005)).

The Advisory Committee Notes caution that the Rule "should not be

misunderstood or distorted.  It is intended to prevent forfeiture when determination of the proper

---

[4]     *Cf*. Esposito v. United States, 368 F.3d 1271, 1278 (10th  Cir. 2004) ("We conclude that
Mr. Esposito's lack of capacity at the time the [FTCA] suit was filed does not prevent the substitution
from relating back to the date the suit was filed under Rule 17(a)").  However, the court appears not to
have considered the implications of Rule 82.

[5]     Although the government's Reply Memorandum refers to Rule 17(c) rather than
17(a)(3), at oral argument counsel for the government stated that this was a typographical error.

party to sue is difficult or when an understandable mistake has been made", and that it is

"intended to insure against forfeiture and injustice". Based upon the Advisory Committee Notes,

some courts and commentators have suggested that the Rule 17(a)(3) should apply only where

there was a reasonable excuse for the failure to designate the proper party. *See*, *e.g*., Board of

Managers, 801 F.Supp.2d at 40 ("the Board has failed to show the injustice or excusable mistake

that courts have required before applying Rule 17(a)(3)"); 6A Wright, Miller, Kane, *et al*.,

Federal Practice & Procedure (Civil), §1555 (3d ed.) ("the rule should be applied only to cases in

which substitution of the real party in interest is necessary to avoid injustice. Thus, it has been

held that when the determination of the right party to bring the action was not difficult and when

no excusable mistake had been made, then Rule 17(a)(3) is not applicable and the action should

be dismissed").

However, the Advisory Committee Notes may be consulted only "[t]o the extent

that the [Rule's] text is ambiguous". United States ex rel. Eisenstein v. City of New York, 540

F.3d 94, 97 (2d Cir. 2008), aff'd, 556 U.S. 928 (2009). "As with a statute, our inquiry is

complete if we find the text of the Rule to be clear and unambiguous." Business Guides, Inc. v.

Chromatic Communications Enterprises, Inc., 498 U.S. 533, 540-541 (1991). Thus, resort to an

interpretation suggested by the Notes "cannot be allowed to contradict the express language of a

Rule". United States v. Nahodil, 36 F.3d 323, 328 (3rd Cir. 1994). "[I]f the rule and the note

conflict, the rule must govern." United States v. Carey, 120 F.3d 509, 512 (4th Cir. 1997), cert.

denied, 522 U.S. 1120 (1998).

Contrary to the interpretation suggested in the Advisory Committee Notes, the

plain wording of Rule 17(a)(3) prohibits dismissal until "*after an objection*, a reasonable time

has been allowed for the real party in interest to ratify, join, or be substituted into the action"

(emphasis added). Some commentators consider it "unfortunate that the rule itself does not

contain some limiting language, for as written the bare language appears to give the district court

no alternative but to permit a relation back". 6A Wright, Miller, Kane, *et al*., Federal Practice &

Procedure (Civil), §1555 (3d ed.); id., n. 11 (*quoting* Cohn, "the New Federal Rules of Civil

Procedure", 54 Georgetown Law Journal, 1204, 1238 (1966)).

Whether or not the absence of limiting language is "unfortunate" is irrelevant, for

my "task is to apply the text, not to improve upon it".  Pavelic & LeFlore v. Marvel

Entertainment Group, 493 U.S. 120, 126 (1989). Where the drafters of the Rules wished to

impose conditions on a Rule's applicability, they did so - *see*, *e.g*., Rule 6(b)(1) ("the court may,

for good cause, extend the time"); Rule 15(a)(2) ("[t]he court should freely grant leave when

justice so requires"); Rule 60(b)(1) (allowing relief "on just terms" for "excusable neglect"). By

contrast, Rule 17(a)(3) contains no such conditions, and  I may "not reject the natural reading of a

rule . . . in favor of a less plausible reading, even one that seems . . . to achieve a better result".

Business Guides, 498 U.S. at 547.

Although the Second Circuit has suggested that Rule 17(a)(3) allows the court

"some discretion to dismiss an action where there was no semblance of any reasonable basis for

the naming of an incorrect party", Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d

11, 20 (2d Cir. 1997), I would exercise my discretion by applying the Rule as written. "[F]ederal

courts have no more discretion to disregard [a] Rule's mandate than they do to disregard

constitutional or statutory provisions".  Bank of Nova Scotia v. United States, 487 U.S. 250, 255

(1988).

Rule 17(a)(3) clearly mandates that an action not be dismissed "until, *after an objection*, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action" (emphasis added). "The Federal Rules of Civil Procedure should be liberally construed, but they should not be expanded by disregarding plainly expressed limitations." Schlagenhauf v. Holder, 379 U.S. 104, 121 (1964). Therefore, while there appears to be no valid excuse for plaintiff's failure to obtain letters testamentary before commencing this action, I may not ignore the Rule's limiting phrase ("after an objection, a reasonable time") in determining how much time she should be allowed for substitution of the proper party.

The objection to plaintiff's status was first raised in the government's Answer dated May 21, 2013 [5], and it seems clear that, but for the parties' agreement to defer her further application for appointment as executrix of Mr. Scharf's estate [14], she would have done so by now. In my view, that would be a "reasonable time" after the government's objection. Accordingly, if Rule 17(a)(3) is applicable (although I believe it is not), I would recommend that the government's motion to dismiss be denied.[6]

**CONCLUSION**

"[O]nce a court determines that jurisdiction is lacking, it can proceed no further and must dismiss the case on that account". Sinochem International Co. Ltd. v. Malaysia

---

[6] In its post-argument Brief ([26], p. 2), the government also argues that applying Rule 17(a)(3) in this case would violate the Rules Enabling Act, 28 U.S.C. §2072(b). However, "because Plaintiff did not have notice that Defendant[ ] would make this argument, the Court declines to consider it as part of the pending motion". Howard v. Cannon Industries, Inc., 2012 WL 5373458, *4, n. 4 (W.D.N.Y. 2012) (Siragusa, J.).

International Shipping Corp., 549 U.S. 422, 434 (2007). Therefore, I recommend that the government's motion to dismiss for lack of subject matter jurisdiction [15] be granted. However, if that recommendation is not adopted, then I recommend that plaintiff be given an opportunity to substitute the executrix of Mr. Scharf's estate pursuant to Rule 17(a)(3), in lieu of dismissal.

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by December 6, 2013 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and

explaining why they were not raised to the Magistrate Judge". Failure to comply with these

provisions may result in the district judge's refusal to consider the objections.


Dated: November 19, 2013

<div style="margin-left: 50%">

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

</div>